## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| SKILLETS, LLC d/b/a SKILLETS RESTAURANT; GOOD BREAKFAST, LLC d/b/a SKILLETS RESTAURANT; and SKILLET HOLDINGS, LLC individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:20-cv-678-HEH |
| v. | |
| COLONY INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Skillets, LLC, Good Breakfast, LLC, and Skillets Holdings, LLC ("Plaintiffs" or "Skillets"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Colony Insurance Company ("Colony"), and in support thereof states the following:

## I.   <u>NATURE OF THE ACTION</u>

1.     Plaintiffs operate nine locations of Skillets Restaurant, a locally and family-owned chain of casual breakfast, brunch, and lunch restaurants, in Southwest Florida. Proudly established by the husband and wife team of Ross and Noreen Edlund in 1995, Skillets' mission is to create delicious, diverse, nutritious breakfasts and lunches for each guest every single day. To that end, Skillets uses premium, high-end ingredients, such as thick-cut Smokehouse bacon, house-roasted (six hours) corned beef hash, fresh-squeezed Kennesaw citrus, carefully selected seasonal berries, private label Guatemalan coffee beans, PG Tips imported English tea, locally sourced dairy products from the Daikin family-operated dairy, and the highest quality steel-cut oats and grits.

And given co-owner Ross Edlund's experience as a baker, Skillets' breads, scones, and biscuits are all house-baked using his very own recipes, and their pancake and waffle batters are also Ross's creations and are always made from scratch. What also sets Skillets apart is their excellent service, which exudes a passion to please. In fact, many of their 319 employees have work with Skillets for 20 years. Skillets has regularly earned positive reviews in the media, as well as on social media sites such as Yelp, Facebook, and Google.

2.      To protect their business in the event that they suddenly had to suspend operations for reasons outside of their control, and/or to prevent property damage, Plaintiffs purchased insurance coverage from Colony, including Specialty Property Coverage through a Business Income (and Extra Expense) Policy, as set forth in Colony's Business Income (and Extra Expense) Form (Form CP 00 30 06 07) ("Business Income Form").

3.      Colony's Business Income Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following damage to property up to the time that business operations are resumed.

4.      Colony's Business Income Form also provides "Civil Authority" coverage, which promises to pay for actual loss of Business Income and necessary Extra Expense caused by the action of a civil authority that prohibits access to the described premises.

5.      Colony's Business Income Form also provides "Extended Business Income" coverage for additional loss of Business Income sustained after business operations are resumed and until the earlier of either (a) business income returns to the previous level had no physical loss or damage occurred, or (b) thirty days.

6.      Colony's Business Income Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

7.     Colony's Business Income Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Colony's insured "must see that the following are done in the event of loss or damage to Covered Property," including, (i) "Give us prompt notice of the direct physical loss or damage," (ii)  "Include a description of the property involved," (iii) "As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred," and (iv) "Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

8.     Unlike many policies that provide Business Income (also referred to as "business interruption") coverage, Colony's Business Income Form does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.

9.     Skillets was forced to suspend or reduce business at their restaurants due to COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2") and the resultant Executive Orders issued by the Governor of Florida mandating the closure of businesses like Skillets for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continued operations (the "Executive Orders").

10.     Due to COVID-19 and the Executive Orders, Skillets has suffered "direct physical loss of or damage" to their properties—under the plain and ordinary meaning of that term—because COVID-19 impaired their restaurants and made the restaurants unusable in the way that they had been used before COVID-19.

11.     The spread and presence of COVID-19 on property damages the property. It makes it unsafe. It causes sickness. Because Skillets Restaurants are frequented by many people, COVID-19 and SARS-CoV-2 were no doubt present at Skillets and infested property surfaces causing physical loss or damage to covered property.

3

12.     Moreover, due to COVID-19, Plaintiffs' nine Skillets properties have suffered direct physical loss and damage under the plain meaning of those words. COVID-19 has impaired Plaintiffs' property by making it unusable in the way that it had been used before COVID-19.

13.     Instead of being able to pack in patrons to their restaurants, from March 20 to May 3, 2020, Skillets could, at most, only serve takeout, which resulted in Skillets realizing only 10 percent of their usual business income. Starting on May 4, 2020, local and state authority authorized businesses including Skillets to resume in-person dining to a limited number of customers at any one time, provided that tables are spaced for six feet social distancing. Skillets was allowed to reopen at 25 percent capacity on May 4, 2020, which was increased to 50 percent capacity starting on May 18, 2020. For Skillets to do otherwise would not only violate state executive orders and civil authorities, but it would also lead to the emergence or reemergence of COVID-19 at the Skillets restaurants and in the community at large. Until COVID-19 was brought even slightly under control, even such limited use as this was not possible.

14.     The loss is "direct."  Skillets is not, for example, asking Colony to reimburse Skillets after someone obtained a judgment against Skillets for getting them sick. Rather, Skillets directly lost the functionality of their restaurant properties for business purposes due to COVID-19 because of the outbreak and presence of the virus

15.     The loss is "physical."  The physical space of Skillets' restaurant properties is unable to function in the manner in which it had previously functioned. The probability of illness prevents the functioning of the physical space in the same way that, on a rainy day, an open roof caused by a tornado would make the interior space of a business unusable.[1] In addition, property

---

[1] It is important to note that Skillets is not seeking recovery for their loss of use. Rather, Skillets is seeking coverage for its loss of business income. Here's an example that drives home the difference between loss of use and loss of business income claims: Some law firms have been unable to use their office space because of COVID-19, but nevertheless, the law firms' business income has increased and they have faced no loss of business income. A claim by such a law firm for not being able to use its office space would be

surfaces have been infested. People came into Skillets; people breathed the air; people's respiration sent COVID-19 infested droplets flying throughout the property and onto property surfaces.

16.     The loss is a "loss." Skillets has lost the use and function of physical space. While its properties could once accommodate many, now they can physically only accommodate a fraction of the number of customers.

17.     Insurers around the country, like Colony, are now wanting federal and state judges to interpret the words "direct physical loss of or damage," but those words need no interpretation. What insurers want is for courts to change the meaning of those terms—instead of just letting a jury apply the facts of the case to these ordinary words and reach a verdict in the same way a jury would reach a verdict if it were called upon to answer whether a person was injured or property was damaged.

18.     Colony has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extended Business Income, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. Indeed, Colony has advised Plaintiffs that they cannot submit a claim under their Colony insurance policy because it has "determined there is no coverage for the reported claim under the terms of the Policy." *See* Exhibit A.

## II.      JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because

---

a "loss of use" claim. The law firm would have no loss of business income claim. Here, Skillets' business at its restaurants has decreased because of the impairment of its business space, and Skillets is seeking the loss of business income under the business interruption coverage of its property insurance policy.

Plaintiffs and Defendant are citizens of different states, and because (a) the Class consists of at least 100 members, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) no relevant exceptions apply to this claim.

20.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this district and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

### III.     PARTIES

21.     Plaintiff Skillets, LLC d/b/a Skillets Restaurant is a Florida limited liability company with its principal places of business in Bonita Springs, Florida. Plaintiffs own and operate two Skillets Restaurant locations in Southwest Florida.

22.     Plaintiff Good Breakfast, LLC d/b/a Skillets Restaurant is a Florida limited liability company with its principal places of business in Bonita Springs, Florida. Plaintiffs own and operate seven Skillets Restaurant locations in Southwest Florida.

23.     Plaintiff Skillets Holdings, LLC is a limited liability company with its principal place of business in Bonita Springs, Florida. Plaintiff Skillets Holdings, LLC owns Plaintiff Skillets, LLC and Plaintiff Good Breakfast, LLC.

24.     Defendant Colony Insurance Co. is a corporation organized under the laws of the State of Virginia, with its principal place of business in Richmond, Virginia. It is authorized to write, sell, and issue insurance policies providing property and business income coverage in all 50 states, the District of Columbia, and the U.S. Virgin Islands. Colony may be served with process through its registered agent, Corporation Service Company, 100 Shockoe Slip Fl 2, Richmond, VA, 23219. At all times material hereto, Colony conducted and transacted business through the selling and issuing of insurance policies within all 50 states, the District of Columbia, and the U.S.

Virgin Islands, including, but not limited to, selling and issuing property and business coverage to Skillets and the other class members.

## IV.    FACTUAL BACKGROUND

*A.    The Business Income Form Protecting Skillets*

25.    In return for the payment of a premium, Colony issued Policy No. 101 CP 0113119-01 to Plaintiffs for a policy period of December 28, 2019 to December 28, 2020, including a Business Income Form. Policy No. 101 CP 0113119-01 is attached hereto as Exhibit B. Plaintiffs performed all of their obligations under Policy No. 101 CP 0113119-01, including the payment of premiums. The Covered Properties, with respect to the Business Income Form are:

(i)    Skillets-Strand
5628 Strand Blvd.
Naples, FL 34110

(ii)    Skillets-Venice
4115 Tamiami Trl. S.
Venice, FL 34293

(iii)    Skillets-Fort Myers
13300 S. Cleveland Ave.
Fort Myers, FL 33907

(iv)    Skillets-North Naples
5461 Airport-Pulling Rd. N.
Naples, FL 34109

(v)    Skillets-University Village
10950 Eagle Village Dr. Unit 330-C
Fort Myers, FL 33913

(vi)    Skillets-Parkshore
4170 Tamiami Trl. N.
Naples, FL 34103

(vii)    Skillets-Bonita Springs
9174 Bonita Beach Road SE
Bonita Springs, FL 34135

(viii)    Skillets-Lely

7

        7711 Collier Blvd. Unit 101
        Naples, FL 34114

(ix)     Skillets-Pavilion
        847 Vanderbilt Beach Road
        Naples, FL 34108

26.     In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.). Most property policies sold in the United States, however, including those sold by Colony, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. Pursuant to Skillets' Business Income coverage, under a form (No. CP 10 30 06 07) entitled "Causes of Loss – Special Form," Colony agreed to cover and pay for all "direct physical loss" "unless the loss" was "excluded" or "limited" by the Causes of Loss – Special Form.

27.     In the Causes of Loss – Special Form, Colony did not exclude or limit coverage for losses from viruses and/or pandemics.

28.     Losses due to COVID-19 are a Covered Cause of Loss under the Colony Causes of Loss – Special Form and the Business Income Form.

29.     In the Business Income Form, Colony agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary "suspension of [their] 'operations'" during the "period of restoration" caused by direct physical loss or damage."

30.     "Business Income" under the policy means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

31.     Plaintiffs and the other Class members' Covered Property suffered direct physical loss or damage. Due to COVID-19, their Covered Property has become unsafe, and thus does not

function, for its intended purpose. Their Covered Properties' business functions have been impaired. If they were to conduct business as usual, the COVID-19 disease and virus would spread among customers, staff and people they contact; many people would get sick; several would require hospitalization; and some would likely die. This is not a non-physical or remote loss such as one occasioned by a breach of contract, loss of a market, or the imposition of a governmental penalty.

32.     The presence of virus or disease, as happened here by the very nature of a pandemic's effect on places where people congregate, can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

33.     Colony's Business Income Form also provides "Civil Authority" coverage, which promises to pay its insureds "for the actual loss of Business Income [they] sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises that prohibits access to the described premises . . . as a result of the damage, and . . . taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage."

34.     COVID-19 caused physical damage to property at and near Plaintiffs' Covered Property and the Covered Property of the other Class Members in the same manner described above that it did with Plaintiffs' Covered Property.

35.     In the Business Income Form, Colony also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses necessary expenses [its insureds] incur during the period of restoration that [they] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."

36.     Colony's Business Income Form also provides "Extended Business Income" coverage for additional loss of Business Income sustained after business "operations are resumed" and until the earlier of either (a) the date that business operations are restored to "the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred," or (b) thirty days.

37.     Colony's Business Income Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Colony's insured "must see that the following are done in the event of loss or damage to Covered Property," including, (i) "Give us prompt notice of the direct physical loss or damage," (ii)  "Include a description of the property involved," (iii) "As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred," and (iv) "Take all reasonable step to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

38.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, Extended Business Income, and Sue and Labor provisions of the Colony policy.

39.     Indeed, many governmental bodies specifically found that COVID-19 causes property damage when issuing stay at home orders. See N.Y.C. Emergency Exec. Order No. 100, at 2 (Mar. 16, 2020)[2] (emphasizing the virulence of COVID-19 and that it "physically is causing property loss and damage"); N.Y.C. Emergency Exec. Order No. 103 at 1 (March 25, 2020)[3] (recognizing the "actions taken to prevent such spread [of COVID-19] have led to property loss and damage"); Broward Cty. Fla. Administrator's Emergency Order No. 20-01, at 2 (Mar. 22, 2020)[4] (noting that COVID-19 "constitutes a clear and present threat to the lives, health, welfare, and safety of the people of Broward County"); Harris Cty. Tex. Office of Homeland Security & Emergency Mgmt., Order of Cty. J. Lina Hidalgo, at 2 (Mar. 24, 2020)[5] (emphasizing that the COVID-19 virus can cause "property loss or damage" due to its contagious nature and transmission through "person-to-person contact, especially in group settings"); Napa Cty. Cal. Health & Human Service Agency, Order of the Napa Cty. Health Officer (Mar. 18, 2020)[6] (issuing restrictions based on evidence of the spread of COVID-19 within the Bay Area and Napa County "and the physical damage to property caused by the virus"); City of Key West Fla. State of Local Emergency Directive 2020-03, at 2 (Mar. 21, 2020)[7] (COVID-19 is "causing property damage due

---

[2] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf

[3] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-103.pdf. Last accessed October 16, 2020.

[4] https://www.broward.org/CoronaVirus/Documents/BerthaHenryExecutiveOrder20-01.pdf. Last accessed October 16, 2020.

[5] https://www.taa.org/wp-content/uploads/2020/03/03-24-20-Stay-Home-Work-Safe-Order_Harris-County.pdf. Last accessed October 16, 2020.

[6] https://www.countyofnapa.org/DocumentCenter/View/16687/3-18-2020-Shelter-at-Home-Order

[7] https://www.cityofkeywest-fl.gov/egov/documents/1584822002_20507.pdf. Last accessed October 16, 2020.

to its proclivity to attach to surfaces for prolonged periods of time"); City of Oakland Park Fla. Local Public Emergency Action Directive, at 2 (Mar. 19, 2020)[8] (COVID-19 is "physically causing property damage"); Panama City Fla. Resolution No. 20200318.1 (Mar. 18, 2020)[9] (stating that the resolution is necessary because of COVID-19's propensity to spread person to person and because the "virus physically is causing property damage"); Exec. Order of the Hillsborough Cty. Fla. Emergency Policy Group, at 2 (Mar. 27, 2020)[10] (in addition to COVID-19's creation of a "dangerous physical condition," it also creates "property or business income loss and damage in certain circumstances"); Colorado Dep't of Pub. Health & Env't, Updated Public Health Order No. 20-24, at 1 (Mar. 26, 2020)[11] (emphasizing the danger of "property loss, contamination, and damage" due to COVID-19's "propensity to attach to surfaces for prolonged periods of time"); Sixth Supp. to San Francisco Mayoral Proclamation Declaring the Existence of a Local Emergency, 26 (Mar. 27, 2020)[12] ("This order and the previous orders issued during this emergency have all been issued … also because the virus physically is causing property loss or damage due to its proclivity to attach to surfaces for prolonged periods of time"); and City of Durham NC, Second Amendment to Declaration of State of Emergency, at 8 (effective Mar. 26, 2020)[13] (prohibiting entities that provide food services from allowing food to be eaten at the site

---

[8] https://oaklandparkfl.gov/DocumentCenter/View/8408/Local-Public-Emergency-Action-Directive-19-March-2020-PDF. Last accessed October 16, 2020.

[9] https://www.pcgov.org/AgendaCenter/ViewFile/Item/5711?fileID=16604. Last accessed October 16, 2020.

[10] https://www.hillsboroughcounty.org/library/hillsborough/mediacenter/documents/administrator/epg/saferathomeorder.pdf. Last accessed October 16, 2020.

[11] https://www.pueblo.us/DocumentCenter/View/26395/Updated-Public-Health-Order---032620. Last accessed October 16, 2020.

[12] https://sfgov.org/sunshine/sites/default/files/sotf_061020_item3.pdf. Last accessed October 16, 2020.

[13] https://durhamnc.gov/DocumentCenter/View/30043/City-of-Durham-Mayor-Emergency-Dec-Second-Amdmt-3-25-20_FINAL. Last accessed October 16, 2020.

where it is provided "due to the virus's propensity to physically impact surfaces and personal property").

**B.** *The Covered Cause of Loss*

40. The threat of and presence of COVID-19 with respect to other property has caused civil authorities throughout the country, including civil authorities with jurisdiction over Plaintiffs' business, to issue orders requiring the suspension of business at a wide range of establishments (the "Closure Orders").

### 1. The COVID-19 Pandemic

41. According to the CDC, "COVID-19 is caused by a coronavirus called SARS-CoV-2. Coronaviruses are a large family of viruses that are common in people and [many] different species of animals, including camels, cattle, cats, and bats. Rarely, animal coronaviruses can infect people and then spread between people."[14]  "The virus that causes COVID-19 is thought to spread mainly from person to person, mainly through respiratory droplets produced when an infected person coughs or sneezes. These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs. Spread is more likely when people are in close contact with one another (within about 6 feet)."[15]

42. "It may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes."[16]  A scientific study investigating the stability of COVID-19 in different environmental conditions found that, following COVID-19 contamination, the virus could be detected hours later for tissues

---

[14] https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Coronavirus-Disease-2019-Basics. Last accessed October 16, 2020.
[15] *Id.*
[16] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. Last accessed October 16, 2020.

and paper, days later for wood, cloth and glass, or even a week later for stainless steel and plastic.[17] All of those materials are present at Skillets Restaurants.

##### 2.    The Florida Closure Orders

43.    On March 1, 2020, Florida Governor Ron DeSantis issued Executive Order 20-51, which directed the Florida Department of Health to issue a Public Health Emergency.

44.    Also on March 1, 2020, the Florida Surgeon General and State Health Officer declared that a Public Health Emergency exists in the State of Florida as a result of COVID-19.

45.    On March 9, 2020, Governor DeSantis issued Executive Order 20-52 declaring a state of emergency for the entire State of Florida as a result of COVID-19.

46.    On March 17, 2020, Governor DeSantis issued Executive Order 20-68 restricting bars, pubs, and nightclubs from selling alcohol and ordered every restaurant to limit its occupancy to 50 percent of its current building occupancy and abide by the CDC's "social distancing" guidelines.

47.    On March 20, 2020, Governor DeSantis issued Executive Order 20-71, which closed all gyms and ordered all restaurants and bars to suspend on-premises food and alcohol consumption for customers, while allowing such establishments to only provide delivery or take-out services.

48.    On April 1, 2020, Governor DeSantis issued a statewide stay at home order through Executive Orders 20-91 and 20-92, which closed all gyms and ordered all restaurants and bars to suspend on-premises food and alcohol consumption for customers, while allowing such establishments to only provide delivery or take-out services.

---

[17] *See* Alex W.H. Chin, et al., "Stability of SARS-CoV-2 in different environmental conditions," The Lancet Microbe (April 2, 2020), available at https://doi.org/10.1016/S2666-5247(20)30003-3.

49.     On April 29, 2020, Governor DeSantis issued Executive Order 20-112 commencing the initial Phase l of Florida's reopening plan, which, effective as of May 4, 2020, allowed restaurants to reopen for in-person dining at 25 percent capacity.

50.     On May 15, 2020, Governor DeSantis issued Executive Order 20-123 initiating the full Phase l of Florida's reopening plan, which, effective as of May 18, 2020, allowed restaurants to increase their indoor dining capacity to 50 percent and permitting outdoor seating with appropriate social distancing.

51.     On June 5, 2020, Governor DeSantis issued Executive Order 20-139, extending Executive Order 20-123, mandating restaurants operate at 50% of their indoor capacity and permitting outdoor seating only with appropriate social distancing.

**3.      The Impact of COVID-19 and the Closure Orders**

52.     The threat and presence of COVID-19 caused "direct physical loss of or damage to" each "Covered Property" under the Plaintiffs' and Class Members' policies, by: (i) impairing the function of, infesting, causing loss and damaging the Covered Property; (ii) denying use of and damaging the Covered Property; (iii) structurally altering the air, surface, and the character of the Covered Property and thus requiring physical repair and/or alterations to the Covered Property; and/or (iv) causing necessary suspension of operations during a period of restoration.

53.     At least 41 of Plaintiffs' employees across their nine locations tested positive for COVID-19.

54.     Because of the threat, spread, and/or presence of COVID-19, the Plaintiffs' physical properties are altered and damaged and have become unsafe, necessitating repairs such as the use of traffic barriers, signs, and table tents, as well as the implementation of advanced sterilization and other protective measures.

55.     In addition, the functional space in the building has been structurally altered and diminished by the threat, spread, and/or presence of COVID-19.   For example, the dining rooms have lost their normal functionality and their space has been diminished.

56.     The Closure Orders, including the issuance of Florida Executive Order Nos. 20-51, 20-52, 20-68, 20-71, 20-91, 20-92, 20-112, 20-123 and 20-139, prohibited access to Plaintiffs' and the other Class Members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions described above resulting from a Covered Cause of Loss.

57.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and the other Class members lost Business Income and incurred Extra Expense.

58.     On June 22, 2020 and July 13, 2020, Skillets attempted to submit a claim to Colony under Plaintiffs' policy.

59.     On July 17, 2020, Colony advised Plaintiffs that they cannot submit a claim under their Colony insurance policy because Colony "determined there is no coverage for the reported claim under the terms of the Policy." *See* Exhibit A.

60.     Colony has, on a widescale basis with many if not all of its insureds, refused to provide Business Income, Extra Expense, Civil Authority, Extended Business Income, or Sue and Labor coverage due to COVID-19 and the resultant executive orders by civil authorities that have mandated the suspension of business.

## V.      CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

62.     Plaintiffs seek to represent nationwide classes defined as:

16

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Colony; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Colony property insurance policy; (c) made, or attempted to make, a claim under their property insurance policy issued by Colony; and (d) were denied Business Income coverage, or otherwise told no covered loss existed, by Colony for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Colony; (b) suffered  loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made, or attempted to make, a claim under their property insurance policy issued by Colony; and (d) were denied Civil Authority coverage, or otherwise told that no covered loss existed, by Colony for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Colony; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Colony property insurance policy; (c) made, or attempted to make, a claim under their property insurance policy issued by Colony; and (d) were denied Extra Expense coverage, or otherwise told that no covered loss existed, by Colony despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had Extended Business Income coverage under a property insurance policy issued by Colony; (b) suffered  a suspension of business, caused by COVID-19, at the premises covered by their Colony property insurance policy; (c) made, or attempted to make, a claim under their property insurance policy issued by Colony; and (d) were denied Extended Business Income coverage, or otherwise told that no covered loss existed, by Colony for the suspension of business caused by COVID-19 (the "Extended Business Income Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Colony; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Colony property insurance policy; (c) made, or attempted to make, a claim under their property insurance policy issued by Colony; and (d) were denied Sue and Labor coverage, or otherwise told that no

covered loss existed, by Colony in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

63.   Plaintiffs also seek to represent nationwide classes defined as:

- All persons and entities with Business Income coverage under a property insurance policy and/or Business Income Policy issued by Colony that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy and/or Businessowner's Protector Policy issued by Colony that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy and/or Businessowner's Protector Policy issued by Colony that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Colony property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with Extended Business Income coverage under a property insurance policy issued by Colony that suffered a suspension of business, caused by COVID-19, at the premises covered by their Colony property insurance policy (the "Extended Business Income Declaratory Judgment Class"

- All persons and entities with a Sue and Labor provision under a property insurance policy and/or Businessowner's Protector Policy issued by Colony that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations at the premises covered by their Colony property insurance policy (the "Sue and Labor Declaratory Judgment Class").

64.   Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

18

65.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

66.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

67.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a.     Colony issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

    b.     whether the Class suffered a covered loss based on the common policies issued to members of the Class;

    c.     whether Colony wrongfully denied all claims based on COVID-19;

    d.     whether Colony's Business Income coverage applies to a suspension of business caused by COVID-19;

    e.     whether Colony's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

    f.     whether Colony's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Colony's Sue and Labor provision applies to require Colony to pay for efforts to reduce damage caused by COVID-19;

h.  whether Colony has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i.  whether Plaintiffs and the Class are entitled to an award of reasonable attorney fees, interest and costs.

68.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, Extended Business Income, and Sue and Labor coverages. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

69.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who it seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies; and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

70.  **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiffs seek class-

wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, Extended Business Income, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

71.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

72.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

73.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

74.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Breach Class.

75.     Plaintiffs' Colony policy, as well as those of the other Business Income Breach Class members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Business Income Breach Class Members' losses for claims covered by the policy.

76.     In the Business Income Form, Colony agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary "suspension of [their] 'operations'" during the "period of restoration" caused by direct physical loss or damage."

77.     "Business Income" under the policy means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

78.     COVID-19 caused direct physical loss and damage to Plaintiffs' and the other Business Income Breach Class Members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiffs' and the other Business Income Breach Class Members' Colony policies.

79.     Plaintiffs and the other Business Income Breach Class Members have complied with all applicable provisions of their policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

80.     By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Breach Class Members in connection with the COVID-19 pandemic, Colony has breached its coverage obligations under the Policies.

81.     As a result of Colony's breaches of the Policies, Plaintiffs and the other Business Income Breach Class Members have sustained substantial damages for which Colony is liable, in an amount to be established at trial.

## COUNT II
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Breach Class)

82.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

83.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Breach Class.

84.     Plaintiffs' Colony policy, as well as those of the other Civil Authority Breach Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Civil Authority Breach Class Members' losses for claims covered by the policy.

85.     Colony's Business Income Form also provides "Civil Authority" coverage, which promises to pay its insureds "for the actual loss of Business Income [they] sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises . . . as a result of the damage, and . . . taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage."

86.     The Closure Orders triggered the Civil Authority provision under Plaintiffs' and the other members of the Civil Authority Breach Class's Colony policies.

87.     Plaintiffs and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

23

88.     By denying coverage for any business losses incurred by Plaintiffs and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Colony has breached its coverage obligations under the Policies.

89.     As a result of Colony's breaches of the Policies, Plaintiffs and the other members of the Civil Authority Breach Class have sustained substantial damages for which Colony is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

90.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

91.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Breach Class.

92.     Plaintiffs' Colony policy, as well as those of the other Extra Expense Breach Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Extra Expense Breach Class Members' losses for claims covered by the policy.

93.     In the Business Income Form, Colony also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses necessary expenses [its insureds] incur during the period of restoration that [they] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."

94.     Due to COVID-19 and the Closure Orders, Plaintiffs and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

95.     Plaintiffs and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

96.     By denying coverage for any business losses incurred by Plaintiffs and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Colony has breached its coverage obligations under the Policies.

97.     As a result of Colony's breaches of the Policies, Plaintiffs and the other members of the Extra Expense Breach Class have sustained substantial damages for which Colony is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – EXTENDED BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Extended Business Income Breach Class)**

98.     Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

99.     Plaintiffs bring this Count individually and on behalf of the other members of the Extended Business Income Breach Class.

100.    Plaintiffs' Colony policy, as well as those of the other Extended Business Income Breach Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Extended Business Income Breach Class Members' losses for claims covered by the policy.

101.    Colony's Business Income Form also provides "Extended Business Income" coverage for additional loss of Business Income sustained after business "operations are resumed" and until the earlier of either (a) the date that business operations are restored to "the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred," or (b) thirty days.

102.    The Closure Orders resulting from the COVID-19 pandemic physically prevented ingress or egress to Plaintiffs' and the Class Members' described premises due to direct loss or

damage to property, other than at the described premises, caused by or resulting from a Covered Cause of Loss.

103.    Plaintiffs and the other members of the Extended Business Income Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

104.    By denying coverage for any business losses incurred by Plaintiffs and other members of the Extended Business Income Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Colony has breached its coverage obligations under the Policies.

105.    As a result of Colony's breaches of the Policies, Plaintiffs and the other members of the Extended Business Income Breach Class have sustained substantial damages for which Colony is liable, in an amount to be established at trial.

**COUNT V**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

106.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

107.    Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

108.    Plaintiffs' Colony policies, as well as those of the other Sue and Labor Breach Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Sue and Labor Breach Class Members' losses for claims covered by the policy.

109. In the Business Income Form, Colony agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

110. In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiffs and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

111. Plaintiffs and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

112. By denying coverage for any Sue and Labor expenses incurred by Plaintiffs and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Colony has breached its coverage obligations under the Policies.

113. As a result of Colony's breaches of the Policies, Plaintiffs and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Colony is liable, in an amount to be established at trial.

**COUNT VI**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

114. Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

115. Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

116. Plaintiffs' Colony policy, as well as those of the other Business Income Declaratory Judgment Class Members, are contracts under which Colony was paid premiums in exchange for

its promise to pay Plaintiffs' and the other Business Income Declaratory Judgment Class members' losses for claims covered by the Policy.

117.    Plaintiffs and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class Members are entitled.

118.    Colony has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

119.    An actual case or controversy exists regarding Plaintiffs' and the other Business Income Declaratory Judgment Class Members' rights and Colony's obligations under the Policies to reimburse Plaintiffs and Class Members for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class Members in connection with the suspension of their businesses stemming from the COVID-19 pandemic.

120.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

i.   Plaintiffs' and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.   Colony is obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT VII
## DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)

121.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

122.    Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

123.    Plaintiffs' Colony policy, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the Policy.

124.    Plaintiffs and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class Members are entitled.

125.    Colony has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

126.    An actual case or controversy exists regarding Plaintiffs' and the other Civil Authority Declaratory Judgment Class Members' rights and Colony's obligations under the Policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiffs and the other Civil Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

30

127.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this

Court declaring the following:

i.    Plaintiffs' and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.   Colony is obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VIII**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

128.    Plaintiffs repeat, reallege, and incorporates by reference the allegations set forth in paragraphs 1-69 as if fully set forth herein.

129.    Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

130.    Plaintiffs' Colony policy, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the Policy.

131.    Plaintiffs and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class Members are entitled.

31

132.    Colony has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

133.    An actual case or controversy exists regarding Plaintiffs' and the other Extra Expense Declaratory Judgment Class Members' rights and Colony's obligations under the Policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiffs and Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

134.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

i.    Plaintiffs' and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.    Colony is obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT IX**
**DECLARATORY JUDGMENT – EXTENDED BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Extended Business Income Declaratory Judgment Class)**

135.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

136.    Plaintiffs bring this Count individually and on behalf of the other members of the Extended Business Income Declaratory Judgment Class.

137.   Plaintiffs' Colony policy, as well as those of the other Extended Business Income Declaratory Judgment Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs and the other Extended Business Income Declaratory Judgment Class Members' losses for claims covered by the Policy.

138.   Plaintiffs and the other Extended Business Income Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class Members are entitled.

139.   Colony has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

140.   An actual case or controversy exists regarding Plaintiffs' and the other Extended Business Income Declaratory Judgment Class Members' rights and Colony's obligations under the Policies to reimburse Plaintiffs and the other Extended Business Income Declaratory Judgment Class Members for the full amount of covered Extended Business Income losses incurred by Plaintiffs and the other Extended Business Income Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

141.   Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extended Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

i.    Plaintiffs' and the other Extended Business Income Declaratory Judgment Class Members' covered Extended Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.    Colony is obligated to pay Plaintiffs and the other Extended Business Income Declaratory Judgment Class members the full amount of the covered Extended Business Income losses incurred and to be incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT X
## DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)

142.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in paragraphs 1-71 as if fully set forth herein.

143.    Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

144.    Plaintiffs' Colony policy, as well as those of the other Sue and Labor Declaratory Judgment Class Members, are contracts under which Colony was paid premiums in exchange for its promise to pay Plaintiffs' and the other Sue and Labor Declaratory Judgment Class Members' reasonably incurred expenses to protect Covered Property.

145.    Plaintiffs and the other Sue and Labor Declaratory Judgment Class Members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Colony or Colony is estopped from asserting them, and yet Colony has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class Members are entitled.

146.    Colony has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

147.    An actual case or controversy exists regarding Plaintiffs' and the other Sue and Labor Declaratory Judgment Class Members' rights and Colony's obligations under the Policies to reimburse Plaintiffs and the other Sue and Labor Declaratory Judgment Class Members for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

148.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Sue and Labor Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

i.      Plaintiffs' and the other Sue and Labor Declaratory Judgment Class Members' reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their Policies; and

ii.     Colony is obligated to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class Members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.      Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Class;

b.      Entering judgment on Counts I-V in favor of Plaintiffs and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extended Business Income Breach Class, the Extra Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.      Entering declaratory judgments on Counts VI-X in favor of Plaintiffs and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory

Judgment Class, the Extended Business Income Declaratory Judgment Class, the Extra Expense

Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows;

    i.    Business Income, Civil Authority, Extended Business Income, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

    ii.    Colony is obligated to pay for the full amount of the Business Income, Civil Authority, Extended Business Income, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

    d.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts

awarded;

    e.    Ordering Defendant to pay attorneys' fees and costs of suit; and

    f.    Ordering such other and further relief as may be just and proper.

## VIII.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:  November 13, 2020        Respectfully submitted,

        **MICHIE HAMLETT**

        By: /s/ Lisa S. Brook
        Lisa S. Brook (VSB No. 35661)
        E. Kyle McNew (VSB No. 73210)
        310 4th Street NE
        PO Box 298
        Charlottesville, Virginia  22902
        Phone: 434-951-7231
        Fax: 434-951-7254
        lbrook@michiehamlett.com
        kmcnew@michiehamlett.com

        Adam J. Levitt *(admitted pro hac vice)*
        Amy E. Keller*
        Daniel R. Ferri*
        Mark Hamill*
        Laura E. Reasons*
        **DiCELLO LEVITT GUTZLER LLC**

Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com

Mark A. DiCello*
Kenneth P. Abbarno *(admitted pro hac vice)*
Mark Abramowitz*
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone:  440-953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

W. Mark Lanier*
Alex Brown*
Ralph (Skip) McBride*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
Skip.McBride@LanierLawFirm.com

Timothy W. Burns*
Jeff J. Bowen *
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin  53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

***Counsel for Plaintiffs
and the Proposed Class***

\* Applications for admission *pro hac vice* to be filed