IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| SKILLETS, LLC d/b/a SKILLETS RESTAURANT, *et al.*, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 3:20cv678–HEH |
| COLONY INSURANCE COMPANY, ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
**(Granting Defendant's Motion to Dismiss)**

This matter comes before the Court on Defendant Colony Insurance Company's ("Defendant") Motion to Dismiss, filed on November 25, 2020 (ECF No. 32). Defendant's Motion raises for the first time before this Court an issue relating to the ongoing COVID-19 pandemic that many other courts around the country have already decided. Plaintiffs Skillets, LLC, Good Breakfast, LLC, and Skillets Holdings, LLC ("Skillets") operate nine locations of Skillets Restaurants in Southwest Florida, and, like most restaurants, were forced to halt in-person dining service as a result of the pandemic. Skillets filed suit in this Court after its insurer, Defendant, denied its reimbursement request for pandemic-related losses. Skillets filed its Second Amended Class Action Complaint (hereinafter "Complaint") on November 13, 2020 (ECF No. 30), alleging breach of contract claims and seeking a declaratory judgment that its losses are covered under its insurance policy with Defendant and that Defendant therefore must pay for said

losses.[1] The parties have filed memoranda supporting their respective positions, and the Court heard oral argument on February 26, 2021. For the reasons stated herein, Defendant's Motion to Dismiss will be granted.

## I.   BACKGROUND

Defendant issued Policy No. 101 CP 0113119-01 to Skillets (the "Policy"), covering a policy period of December 28, 2019 to December 28, 2020.[2] (Compl. ¶ 25.) Like the many other property insurance policies addressed by courts in the United States facing this issue, the Policy is an "all-risk" policy. (*Id.* ¶ 26.) All-risk policies provide blanket coverage terms and may include specific exclusions, as opposed to enumerating every specific risk covered. (*Id.*) In general, the Policy provides that Defendant "will pay for direct physical loss of or damage to Covered Property at the premises . . . caused

---

[1] Skillets filed suit "individually and on behalf of the other members of . . . defined nationwide classes." (Compl. 1.) The Federal Rules of Civil Procedure provide four prerequisites for a lawsuit to proceed as a class action: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 459 (4th Cir. 2003). Plaintiffs provide only conclusory Rule 23(a) allegations in the Complaint, and have not yet moved to certify the putative class. Accordingly, the Court will determine the merits of the Complaint only as they apply to Plaintiffs and not to any members of a proposed class. *See, e.g., Bluegrass, LLC v. State Auto. Mutual Ins. Co.*, No. 2:20CV414, 2021 WL 42050, at *3 (S.D. W. Va. Jan. 5, 2021); *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's, London*, No. 1:20CV21827-GAYLES/OTAZO-REYES, 2020 WL 7699672, at *4 n.3 (S.D. Fla. Dec. 28, 2020).

[2] In ruling on a motion to dismiss, a court may "consider documents attached to the complaint . . . ." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The Court will accordingly rely on the language contained in the Policy, attached to the Complaint as Exhibit B. In the event of any conflict between the allegations in the Complaint and the content of the Policy, the Policy will prevail. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.").

by or resulting from any Covered Cause of Loss." (*Id.*, Ex. B at 19, ECF No. 30-2.) "Covered Causes of Loss" is defined as "Risks Of Direct Physical Loss" unless subject to an enumerated list of exclusions in the Policy's "Causes of Loss – Special Form." (*Id.* at 45–54.) The Policy does not include a virus exclusion provision. (*Id.*) Skillets alleges that its losses are covered under five provisions in the "Business Income (and Extra Expense) Coverage Form" ("Business Income Form"): Business Income, Extra Expense, Civil Authority, Extended Business Income, and Sue and Labor. (Compl. ¶¶ 28–38; Ex. B at 34–42.) The Business Income Form provides in relevant part:

> **A. Coverage**
> **1. Business Income**
>
> . . . .
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . . .
>
> **2. Extra Expense**
>
> . . . .
>
> **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> . . . .

3

**5. Additional Coverages**
   **a. Civil Authority**

   . . . .

   When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
   (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
   (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

   . . . .

   **c. Extended Business Income**
   **(1) Business Income Other Than "Rental Value"**
   If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:
   **(a)** Begins on the date property . . . is actually repaired, rebuilt or replaced and "operations" are resumed; and
   **(b)** Ends on the earlier of:
   **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or
   **(ii)** 30 consecutive days after the date determined in **(1)(a)** above.
   However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

> > Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.
>
> . . . .
>
> **C. Loss Conditions**
>
> . . . .
>
> > **2. Duties In The Event Of Loss**
> > > **a.** You must see that the following are done in the event of loss:
> > > > **(1)** Notify the police if a law may have been broken.
> > > > **(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.
> > > > **(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.
> > > > **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses . . . .
> > > > **(5)** As often as may be reasonably required, permit us to inspect the property . . . .
> > > > **(6)** Send us a signed, sworn proof of loss . . . .
> > > > **(7)** Cooperate with us in the investigation or settlement of the claim.
> > > > **(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

(*Id.*, Ex. B at 34–39.) The "Duties In The Event Of Loss" provision is commonly referred to as a "Sue and Labor" provision.[3] (Compl. ¶ 37.)

---

[3] Relying on *Swire Pacific Holdings, Inc. v. Zurich Insurance Co.*, 139 F. Supp. 2d 1374 (S.D. Fla. 2001), Skillets argues that the Policy's Sue and Labor provision provides coverage in that it entitles them to reimbursement for expenditures made in cooperation with the provision. (Pls.' Br. Opp'n 37, ECF No. 34.) Applying Florida law in interpreting an insurance contract, the court in *Swire* held that the plaintiff's damages were excluded and no coverage existed under the insurance policy. 139 F. Supp. 2d at 1381–82. The court subsequently found that the Sue and Labor provision did not alone provide coverage, and as the plaintiff's losses were not covered by the insurance policy, it could not separately recoup losses under that provision. *Id.* at 1382–85. There, as here, the Sue and Labor provision was not included in the coverage portion of the policy but in a "conditions" portion of the policy. *Id.* at 1383. Therefore, this provision does not provide coverage but allows an insured to recoup costs "incurred with respect to a covered loss."

5

The Governor of Florida, Ron DeSantis ("Governor DeSantis") declared a state of emergency for the State of Florida on March 9, 2020, in response to the COVID-19 pandemic. (*Id.* ¶ 45.) On March 17, 2020, Governor DeSantis issued an executive order requiring that restaurants reduce occupancy capacity by fifty percent and abide by the Center for Disease Control's ("CDC") social distancing guidelines. (*Id.* ¶ 46.) Governor DeSantis subsequently suspended all indoor dining services on March 20, 2020, limiting restaurants to delivery or take-out services. (*Id.* ¶ 47.) All indoor dining services were suspended until May 4, 2020, when Florida commenced Phase 1 of its reopening plan, which allowed restaurants to operate indoor dining at twenty-five percent occupancy capacity. (*Id.* ¶ 49.) As of May 18, 2020, Florida restaurants could increase indoor occupancy to fifty percent of capacity, as well as continue providing delivery, take-out, and socially distant outdoor dining services. (*Id.* ¶ 50.)

Skillets submitted claims to Defendant on June 22, 2020, and July 13, 2020, for relief under the Policy from losses incurred due to the pandemic. (*Id.* ¶¶ 57–59.) On July 17, 2020, Defendant responded that no coverage existed under the Policy for Skillets's losses. (*Id.*) Skillets thereafter filed suit in this Court, alleging that the pandemic structurally altered and diminished the functional space in its restaurants, and that Governor DeSantis's orders restricting Florida restaurants (the "closure orders") prohibited its access to property covered under the Policy. (*Id.* ¶¶ 55–56.) Skillets principally argues that the phrase "direct physical loss of or damage to property"

---

*Id.* This Court will find that the Policy does not provide coverage for Skillets's losses, and accordingly need not further discuss the Sue and Labor provision.

6

(hereinafter "direct physical loss") does not require actual physical or structural alteration to apply coverage, but that, even if structural alteration is required, its allegations that the coronavirus was actually present in covered property constitute structural alteration. (Pls.' Br. Opp'n 6–14, ECF No. 34.) As a result, Skillets maintains that it suffered lost business income and incurred extra expenses covered under the Policy. (Compl. ¶¶ 57–60.) Plaintiff also argues that the Policy's lack of virus exclusion coverage supports its claim for pandemic-related losses, and that the Complaint sufficiently alleges that Skillets, as well as all bars and restaurants near Skillets, suffered physical loss or damage due to the pandemic to warrant coverage under the Policy's Civil Authority provision. (Pls.' Br. Opp'n 20–26.)

Defendant moves to dismiss the Complaint, arguing that Florida courts have uniformly held that losses incurred by Florida restaurants as a result of the ongoing pandemic and the related closure orders do not constitute direct physical loss. (Def.'s Br. Supp. 9–17, ECF No. 33.) Therefore, Defendant argues that this Court should similarly find that the same language here precludes coverage under the Policy. Finally, Defendant asserts that the Civil Authority provision does not supplant coverage because neither Skillets nor any surrounding restaurant suffered a direct physical loss and access to Skillets restaurants was never fully prohibited.[4] (*Id.* at 20–21.)

---

[4] Defendant also argues that, even if the Policy covers Skillets's alleged losses, the "period of restoration" language in the Business Income Form limits the coverage period. (*Id.* at 9.) Discussion of the "period of restoration" limitation is unnecessary as the Court will find that the Policy does not cover Skillets's alleged losses.

7

## II. STANDARD OF REVIEW

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). "In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd.*

*v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

The parties both apply Florida law in their briefs and this Court finds that Florida law governs this Court's analysis of the Policy.[5] (Def.'s Br. Supp. 6–7; Pls.' Br. Opp'n 5.) Florida contract law dictates that interpretation of an insurance policy is a matter of law to be decided by the court. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). Plain and unambiguous language in the policy controls the court's analysis. *Id.*; *see also Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). If more than one reasonable interpretation exists, "one providing coverage and the other limiting coverage," then the policy "is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). In interpreting the insurance policy, courts must look at the policy in its entirety. *Id.* Interpreting an all-risk

---

[5] Skillets clearly sets Florida law as the framework for interpreting the Policy in its opposition brief (ECF No. 34 at 5), but seems to question its own argument in a footnote in its Notice of Supplemental Authorities (ECF No. 41) submitted pursuant to this Court's request prior to the hearing on this Motion. Regardless, this Court applies Florida law in interpreting the terms of the policy. This Court, sitting in diversity, must apply Virginia's choice-of-law rules. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (citing *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 419 (4th Cir. 2004)). In Virginia, the law of the place where the insurance contract is delivered controls. *Id.* at 635–36 (citing *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993)). Neither the Complaint nor the Policy states where the Policy was delivered. Defendant in its opening brief argues that the Policy was delivered in Florida, a point that Skillets does not refute. (ECF No. 33 at 6–7.) Far from it— Skillets also relies on substantive Florida contract law in its opposition brief. Further, the Policy's terms support Defendant's contention. The period of coverage is based on time in Florida and the Policy appears to have been last signed in Florida. (Compl., Ex. B at 4.) Therefore, this Court will apply Florida law to interpret the Policy.

policy, the Florida Supreme Court noted that these policies are "all-risk," not "all-loss." *Sebo v. Am. Home Assurance Co., Inc.*, 208 So. 3d 694, 696–97 (Fla. 2016). Generally, the party claiming coverage under the policy bears the burden of proving that coverage exists. *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 878 (11th Cir. 2020) (citing *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. Dist. Ct. App. 1977)).

### III. ANALYSIS

Skillets did not suffer a direct physical loss as a result of COVID-19 or the closure orders, and its business losses incurred as a result of these events are therefore not covered by the Policy. This Court will follow the rising tide of courts applying Florida law—as well as other states' laws around the country—finding that "there is simply no coverage [for loss of business due to COVID-19] under policies if [the policies] require 'direct physical loss of or damage' to property." *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, No. 8:20CV2481-VMC-SPF, 2021 WL 268478, at *6 (M.D. Fla. Jan. 27, 2021) (quoting *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's, London*, No. 8:20CV1605-T-30AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020)) (alterations in original). In *Rococo Steak*, the court held, applying Florida law, that neither the business income clause, the extra expense coverage clause, nor the civil authority clause in an all-risk policy covered the plaintiff restaurant's pandemic-related losses. *Id.* at *3–6. Interpreting insurance contract language substantively identical to the language in the Policy before this Court, the court in *Rococo Steak* applied the United States Court of Appeals for the Eleventh Circuit's definition of direct physical loss: "'actual' and

representing the 'diminution of value of something.'" *Id.* at *3–4 (citing *Mama Jo's Inc.*, 823 F. App'x at 879).

Skillets correctly distinguishes *Mama Jo's* as a case decided by the Eleventh Circuit before the COVID-19 pandemic. *See Mama Jo's Inc.*, 823 F. App'x at 871, 878–79 (holding that dust and debris from roadway construction near the plaintiff restaurant did not constitute direct physical loss because not only could the restaurant service the same number of customers as before the construction, but the alteration was removable through cleaning). However, Skillets fails to recognize the core holding that alterations removable by cleaning do not constitute direct physical loss, and ignores the variety of Florida courts applying *Mama Jo's* to deny coverage under similar all-risk policy claims. *See, e.g., Rococo Steak, LLC*, 2021 WL 268478, at *4; *Sun Cuisine, LLC*, 2020 WL 7699672, at *3 (citing *Mama Jo's* for its definition of direct physical loss as an actual damage that causes a diminution of value); *Raymond H Nahmad DDS PA v. Hartford Casualty Ins. Co.*, No. 1:20CV22833-BLOOM/Louis, 2020 WL 6392841, at *7–8 (S.D. Fla. Nov. 1, 2020) (finding that the plaintiff failed to plead a direct physical loss, using *Mama Jo's* as an example, and that the plaintiff sought only coverage for financial losses due to closure orders); *Infinity Exhibits, Inc.*, 2020 WL 5791583, at *4 (applying *Mama Jo's* in finding that language in an all-risk policy was unambiguous and that even suspension of operations does not establish direct physical loss); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615CV-WILLIAMS/TORRES, 2020 WL 5051581, at *8–9 (S.D. Fla. Aug. 26, 2020) (discussing *Mama Jo's* at length and recommending that the defendant insurance company's motion to dismiss be granted). Skillets also attempted to

11

distinguish *Mama Jo's* at oral argument because that case was decided on summary judgment. At least one court has explicitly rejected this argument, however, and other courts interpreting *Mama Jo's* in this context have done so, not at the summary judgment stage, but at the motion to dismiss stage. *See id; see also Town Kitchen, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-22832-CIV-MORENO, 2021 WL 768273, at *7 (S.D. Fla. Feb. 26, 2021) (finding that the plaintiff's arguments distinguishing *Mama Jo's*, including that *Mama Jo's* was decided on summary judgment, "fall flat"). This Court likewise finds that Skillets fails to plead that either COVID-19 or the closure orders constitutes a direct physical loss because neither physically altered Skillets's restaurants.

Skillets argues that it sufficiently pleads direct physical loss because it specifically alleged that COVID-19 was present in its restaurants. The Complaint indeed contains several conclusory, and largely speculative, allegations: that COVID-19 was "no doubt present at Skillets and infested property surfaces"; that "[p]eople came into Skillets . . . [and] sent COVID-19 infested droplets flying throughout the property"; and that multiple Skillets employees tested positive for COVID-19. (Compl. ¶¶ 11, 15, 53.) As a threshold matter, this argument is not persuasive because Skillets's alleged claims and damages are inseparable from the closure orders. Skillets seeks to recoup business losses incurred due to the reduced capacity the closure orders mandated *as a result of* the pandemic. (*See id.* ¶¶ 54–57.) Furthermore, other courts that frequently interpret Florida law have denied this exact theory. *See Rococo Steak, LLC*, 2021 WL 268478, at *4 ("[L]ike the coating of dust and debris in *Mama Jo's*, the surfaces allegedly contaminated by COVID-19 seem to only require cleaning to fix. . . . Therefore, Rococo cannot allege

12

direct physical loss by claiming its property was superficially contaminated with COVID-19 particles."); *Carrot Love, LLC v. Aspen Specialty Ins.*, No. 20-23586-CIV-SCOLA, 2021 WL 124416, at *1–3 (S.D. Fla. Jan. 13, 2021) (denying the plaintiff restaurants' request for coverage under all-risk policy despite allegations that COVID-19 was deposited on surfaces in the restaurants); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, No. 4:20CV10056-KMM, 2021 WL 117898, at *3 (S.D. Fla. Jan. 11, 2021) ("[Plaintiff] fails to allege that the mere presence of COVID-19 particles on the doors, floors, and walls of the Properties renders them *physically altered* . . . ."); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, No. 1:20CV23661-BLOOM/Louis, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) (finding no direct physical loss—despite speculative allegations of the presence of COVID-19 in the plaintiff catering company's property—because no direct physical loss can occur where the alleged harm is mere presence of a virus).

Skillets primarily relies on cases that are neither binding on this Court nor instructive in its analysis. For the most part, Skillets cites cases from trial courts in jurisdictions other than Florida, many of which were decided before the pandemic. The Court here will only address the few relevant cases cited by Skillets. Only two cases involve application of Florida law to a COVID-19-related claim, and both are distinguishable from the instant matter. First, in *Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Co., Ltd.*, the United States District Court for the Middle District of Florida found that the plaintiff, a gynecologist practice forced to close its doors entirely by the closure orders, sufficiently stated a plausible claim that it incurred "losses which may be covered under the insurance contract." No. 6:20CV1174-ORL-

22EJK, 2020 WL 5939172, at *1, 4 (M.D. Fla. Sept. 24, 2020). The court's analysis was hampered, however, by the plaintiff's failure to attach the entire insurance policy to the complaint. *Id.* at *4. Without the policy, the court declined to "make a decision on the merits of the plain language of the [insurance policy] to determine whether [the plaintiff's] losses were covered." *Id.* Absent any discussion of the available coverage under the policy, this Court finds *Urogynecology Specialist* unpersuasive. Skillets also relies upon *Johnston Jewelers, Inc. v. Jewelers Mutual Insurance Co.* as an example of a Florida court denying a motion to dismiss claims for insurance coverage amid the COVID-19 pandemic; that case is similarly unpersuasive as the court only issued an order summarily denying the motion. No. 20-002221-CI, 2020 WL 6556842, at *1 (Fla. Cir. Ct. Sept. 22, 2020).

Finally, Skillets points to *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.*, a case decided by Judge Raymond A. Jackson in this District, as instructive. No. 2:20CV265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020). Although Judge Jackson, applying Virginia law, denied a motion to dismiss a similar COVID-19 suit, he discussed at length the Virginia courts' ambiguous interpretations of all-risk policies.[6] *Id.* at *7–10. As previously stated, this Court's analysis is cabined by Florida law, and therefore, Judge Jackson's opinion, while well-reasoned, does not influence this Court's decision.

---

[6] Complete comparison of the facts and allegations before Judge Jackson is unnecessary as this Court is bound by Florida, not Virginia, law, but unlike Skillets, the plaintiff business in *Elegant Massage* was closed entirely by Virginia's closure orders. *See id.* at *1.

14

Skillets makes two additional arguments that the Court will briefly address. First, Skillets attempts to distinguish the cases cited herein and by Defendant because some of the policies in those cases included virus exclusion clauses not present in the Policy here. This is a distinction without a difference. Courts interpreting all-risk policies containing virus exclusion clauses have only addressed these clauses in the alternative, or have declined to analyze the issue at all. *See, e.g., First Watch Rests., Inc. v. Zurich Am. Ins. Co.*, No. 8:20CV2374-VMC-TGW, 2021 WL 390945, at *4 (M.D. Fla. Feb. 4, 2021) ("Since First Watch cannot show coverage . . . the Court does not address whether the contamination exclusion, or any exclusion, is applicable."); *Raymond H Nahmad DDS PA*, 2020 WL 6392841, at *9 (addressing virus exclusion clause in the alternative). As this Court finds that no coverage exists under the Policy, any issues regarding whether a covered risk is excluded are moot. Second, Skillets relies on dictionary definitions of the Policy's terms to craft its own definition of direct physical loss. This Court has the benefit of interpretations of near-identical all-risk policy language by both a wide swath of Florida courts and the Eleventh Circuit, and finds no reason to stray from their well-worn path.

Skillets fails to allege that it suffered direct physical loss covered by the Policy. Coverage under the Policy's Business Income provision is conditioned upon "suspension" of Skillets's "operations" during a "period of restoration" caused by a direct physical loss. (Compl., Ex. B at 34.) Skillets's inability to allege a direct physical loss is similarly fatal to its allegations under other Policy provisions. Direct physical loss is also a required component for coverage under the Policy's Extra Expense and Extended

15

Business Income provisions. (*Id.* at 34–36.) The Policy's Civil Authority provision differs slightly in that it provides coverage when an "action of civil authority . . . prohibits access" to Skillets's property due to damage to other nearby properties. (*Id.*) The other property damage must be within a mile of Skillets's property, and the damage must be caused by direct physical loss. (*Id.*) Civil authority coverage therefore does not directly require that Skillets suffered direct physical loss, but is still dependent upon other surrounding property suffering direct physical loss.

The Complaint conspicuously lacks any specific allegation that any property surrounding Skillets suffered a direct physical loss. Skillets relies only on a bald allegation that "COVID-19 caused physical damage to property at and near" Skillets. (Compl. ¶ 34.) Even if Skillets could specifically allege that the presence of COVID-19 in surrounding properties caused the closure orders, the presence of COVID-19 is not a direct physical loss, and thus Civil Authority coverage does not apply here. Further, the Complaint does not allege that "access" was prohibited by "action of civil authority." (*Id.*, Ex. B at 35.) The closure orders restricted the services Skillets could provide to customers, but "[m]erely restricting access . . . does not trigger coverage under [a] Civil Authority provision." *Raymond H Nahmad DDS PA*, 2020 WL 6392841, at *9; *see also Edison Kennedy, LLC v. Scottsdale Ins. Co.*, No. 8:20CV1416-T-02SPF, 2021 WL 22314, at *6–7 (M.D. Fla. Jan. 4, 2021) (finding no coverage under a civil authority provision when the plaintiffs did not allege any direct physical damage to surrounding property or that any damage denied the plaintiffs access to their own property) (first citing *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20CV21525-

16

UU, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020); then citing *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, No. 9:20CV80677-UU, 2020 WL 7251643 (S.D. Fla. Dec. 9, 2020)).

### III. CONCLUSION

The Complaint fails to allege that COVID-19 or the closure orders caused Skillets's restaurants any physical harm. The presence of COVID-19 on restaurant surfaces, even if sufficiently alleged, does not change, alter, or damage Skillets's property. As established by the Eleventh Circuit, alterations remedied by normal cleaning procedures cannot constitute structural alteration sufficient to trigger coverage for a direct physical loss. *Mama Jo's, Inc.*, 823 F. App'x at 879. Neither does compliance with the CDC's social distancing guidelines or reducing services to take-out and delivery constitute direct *physical* loss. Though the Court sympathizes with Skillets and other restaurant owners around the country who have suffered greatly from reduced demand due to the pandemic, Skillets fails to distinguish itself from the current precedent denying its requested coverage. Finding that no coverage exists under the Policy for Skillets's alleged losses, the Court will grant Defendant's Motion to Dismiss. The Court further finds that any amendment would be futile based on the facts and circumstances of this case, and will dismiss Skillets's Complaint with prejudice. *See Elrod v. Busch Ent. Corp.*, 479 F. App'x 550, 551 (4th Cir. 2012) (allowing trial courts to deny leave to amend a complaint if complaint, as amended, would not withstand a motion to dismiss); *see also First Watch Rests., Inc.*, 2021 WL 390945, at *5; *Prime Time Sports Grill, Inc.*

17

*v. DTW 1991 Underwriting Ltd.*, No. 8:20CV771-T-36JSS, 2020 WL 7398646, at *7 (M.D. Fla. Dec. 17, 2020).

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 10, 2021
Richmond, Virginia